1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10

11   GERALD LEE MILLER            )   Civil No.11-2333-JLS(WVG)
                                  )
12              Plaintiff,        )   REPORT AND RECOMMENDATION
                                  )   GRANTING IN PART AND
13   v.                           )   DENYING IN PART
                                  )   DEFENDANTS' MOTION
14   L.S. MCEWEN, et. al          )   TO DISMISS PLAINTIFF'S
                                  )   SECOND AMENDED COMPLAINT
15              Defendants.       )
                                  )   (DOC. NO. 40)
16   _____)
                                  )
17

18        Plaintiff  Gerald  L.  Miller  ("Plaintiff")  sues

19   Defendants L. McEwen ("McEwen")[1], G. Janda ("Janda"), C.

20   Paramo ("Paramo"), M. Castro ("Castro"), R. Lizarraga

21   ("Lizarraga"), H. Amezcua ("Amezcua"), S. Hardman

22   ("Hardman"), T. Alvarez ("Alvarez"), B. Dominguez

23   ("Dominguez"), J. Flores ("Flores"), M. Vitela ("Vitela"),

24   Dr. R. Kornbluth ("Dr. Kornbluth"), J. Zamora ("Zamora"),

25   and  C.  Villalobos  ("Villalobos")(collectively  "Defen-

26

27   _____

28        [1] Defendants refer to McEwen as both "McEwen" and "McEwan."  Plaintiff
     spells McEwen's name as "McEwen."  The Court will use the Plaintiff's spelling as
     that is how the name appears in the case title.

dants")[2] for alleged violations of his constitutional rights that occurred while Plaintiff was incarcerated at Calipatria State Prison ("CSP"). Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion"). In the Motion, Defendants contend that several of Plaintiff's causes of action against them fail to state a claim.[3] Having considered the Motion, Plaintiff's Response and Opposition, the evidence presented, and the relevant law, the Court RECOMMENDS that Defendants' Motion to Dismiss be GRANTED in part and DENIED in part.

## I.   Background

### A.   Procedural Background

On February 1, 2013, Plaintiff filed the Second Amended Complaint ("SAC") alleging that Defendants violated his constitutional rights.

On February 21, 2013, Defendants filed the Motion before the Court. On March 25, 2013, Plaintiff filed an Opposition to the Motion.

---

[2] In the SAC, Plaintiff also includes an Alvarez (other than T. Alvarez) as a Defendant. Plaintiff does not provide this Defendant Alvarez's first initial in the SAC. The Court believes this Alvarez to be the same Alvarez that the District Court Judge assigned to this case terminated from the docket on October 22, 2012. (Order Dismissing Defendant Alvarez at 4, ECF no. 17.) Plaintiff contends that a summons and the SAC were served on an M. Alvarez, which is actually the first initial of this Defendant Alvarez. [Plaintiff's Response and Opposition to Defendants' Motion to Dismiss SAC ("Opposition") at 13.] But the District Court Judge assigned to this case rejected Plaintiff's attempt to serve an M. Alvarez. (See Notice of Document Discrepancy, ECF no. 41.) Therefore, the Court will not address Plaintiff's claims against M. Alvarez, and when the Court refers to an Alvarez in the Report and Recommendation, it is referring to T. Alvarez.

[3] Defendants also concede that, as currently pled, some of Plaintiff's claims do survive beyond this stage of the litigation.

1   **B.   Factual Background**[4/]

2   The events alleged in the SAC occurred while

3   Plaintiff was as an inmate incarcerated at CSP. (SAC at

4   2.)[5/]  Plaintiff alleges the following:[6/]

5   **i. Allegations Regarding Defendant McEwen**

6   On July 7, 2010, Plaintiff was transferred to CSP.

7   (Id. at 6.)  On August 1, 2010, Plaintiff informed Warden

8   McEwen that he wanted to file an administrative grievance

9   because he was missing personal and legal property. (Id.)

10  Plaintiff alleges that McEwen did not respond to his

11  request, and instead, on August 2, 2010, sent him to

12  another prison yard littered with racial tension. (Id.)

13  On August 5, 2010, a District Court Judge Ordered

14  CSP and McEwen to turn over Plaintiff's missing property.

15  (Id. at 7.)[7/]  On August 8, 2010, in retaliation for the

16  District Court Judge's Order, Plaintiff was set up to be

17

18  _____

19  [4/] Since Plaintiff has many causes of action against many different Defendants, the Court will recite the facts of the case as they pertain to each Defendant, not in chronological order.  Naturally, some of the allegations pertain to multiple Defendants.  The Court apologizes in advance for any redundancy that appears in the Report and Recommendation, but believes that this approach is the most efficient way to present Plaintiff's claims against the various Defendants.

20

21

22  [5/] All page references to documents contained in the Court's docket are to the Court Clerk's ECF pagination, not the document's native, pre-filing, pagination.

23

24  [6/] Since Defendants present a Motion to Dismiss, the Court accepts all material facts alleged in the SAC as true, and recites the factual background from the SAC.  See Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

25  [7/] In the SAC, Plaintiff does not list the case number in which this order was issued.  However, in the Opposition, Plaintiff states that he was involved in

26  civil litigation on September 10, 2010 in case number 1:08-cv-1233, but does not specify anything more.  (Opposition at 11.)  The Court viewed the docket report

27  in that case.  An order was issued on August 6, 2010 directing the litigation coordinator at CSP to turn over Plaintiff's legal property. [Order: (1) Following Status Conference; and (2) Setting Forth First Amended Scheduling Order, No. 1:08-

28  cv-1233 (E.D. Cal. Aug. 6, 2010), ECF No. 87.]  The Court believes that the August 6, 2010 order was issued in case number 1:08-cv-1233.

11cv2333

attacked by a group of white prisoners.[8]   (<u>Id.</u>)   As a
result of the attack, Plaintiff was given an undeserved
rules violation report and sent to the Administrative
Segregation Unit ("ASU").   (<u>Id.</u>)   On September 12, 2010
Plaintiff was found guilty of a Division D offense arising
from the rules violation report and assessed a ninety-day
forfeiture of good time credits.   (<u>Id.</u>)

On February 17, 2011, Plaintiff appeared before
McEwen and the Internal Classification Committee ("ICC")
to explain that he was illegally being detained in the ASU
for more than ninety days in violation of his due process
rights and in violation of California Code of Regulations

---

[8] It is unclear whether Plaintiff alleges that McEwen was responsible for
setting up the attack.

11cv2333

1  Title 15, Sections 3335(d) and (e).[9/]  [("Section 3335(d)"

2  or "Section 33335(e)"].[10/]  (<u>Id.</u>)

3        Plaintiff explained to McEwen and the ICC that he

4  had been held in the ASU six months past his scheduled

5

_____

6     [9/] The relevant part of Section 3335(d) states:

7          When, pursuant to this section, an [Internal Classification
           Committee] retains an inmate on segregation status, the case
           shall be referred to a Classification Staff Representative
8          (CSR) for review and approval.  Unless otherwise directed by
           the CSR, subsequent [Internal Classification Committee]
9          reviews shall proceed in accordance with the following
           timeline[] until the inmate is removed from segregation
10         status:

11              (1) At intervals of not more than 90 days until pending
                Division C, D, E, or F rules violation report is
                adjudicated.  Upon resolution of such matters, an
12              [Internal Classification Committee] shall review the
                inmate's case within 14 calendar days.  At that time, if
13              no further matters are pending, but continued
                segregation is required pending transfer to a general
                population, [Internal Classification Committee] reviews
14              shall be within at least every 90 days until the
                transfer can be accomplished.

15  Section 3335(e) states:

16          Inmate retention in administrative segregation beyond the
            initial segregation [Internal Classification Committee]
17          hearing shall be referred for CSR review and approval within
            30 days and then thereafter in accordance with subsection (d)
18          above.  In initiating such reviews an [Internal Classification
            Committee] shall recommend one of the following possible
            outcomes:

19
                (1) Transfer to another institution in accordance with
20              section 3379.
                (2) Transfer to a Segregated Program Housing Unit in
                accordance with section 3341.5
21              (3) Retention in segregation pending completion of an
                active investigation into an alleged violation of the
22              rules/disciplinary process, and investigation of other
                matters, or resolution of criminal prosecution.  In such
23              instances an [Internal Classification Committee] shall
                offer a reasonable projection of the time remaining for
                the resolution of such matters.

24

25     [10/] Throughout the SAC, Plaintiff cites to various sections of California
    Code of Regulations Title 15.  The Court is unsure whether Plaintiff is stating
    separate claims, along with his Constitutional claims, for violations of
26  California Code of Regulations.  If he does so intend, the Court will not address
    these separate, private causes of action because 42 U.S.C. § 1983 only provides
27  redress for violations of the U.S. Constitution and federal laws.  <u>See Lovell v.
    Poway Unified School District</u>, 90 F.3d 367, 370 (9th Cir. 1996) ("To the extent
    that the violation of a state law amounts to the deprivation of a state-created
28  interest that reaches beyond that guaranteed by the federal Constitution, Section
    1983 offers no redress.").

1  release date.  (Id.)  Moreover, he told the ICC that this
2  prolonged stay was in violation of Section 3335(d) and
3  Section 3335(e) because nobody referred his case to a
4  classification staff representative ("CSR").  (Id.)
5  Plaintiff alleges that these actions were taken in retali-
6  ation for Plaintiff's pending civil litigation.[11/]  (Id.)

7      Plaintiff also explained to McEwen and the ICC that
8  his son was shot five times, and because Plaintiff was in
9  the ASU, he was unable to call his son.  (Id. at 8.)
10  Moreover, Plaintiff's mail was withheld from him while he
11  was in the ASU.  (Id.)  This resulted in the severance of
12  family ties.  (Id.)  Further, during his time in the ASU
13  Plaintiff was denied access to the law library, televi-
14  sion, a package, and job opportunities.  (Id.)  Conse-
15  quently, Plaintiff suffered more than the normal hardships
16  associated with incarceration.  (Id.)

17      Additionally, just three days after Plaintiff was
18  released from the ASU, prison officials sent the same
19  inmate who attacked him previously to do so again.  (Id.)
20  This was also done in retaliation for Plaintiff's pending
21  civil lawsuit.  (Id.)  In turn, Plaintiff was sent back to
22  the ASU.  (Id.)

23      After February 17, 2011, Plaintiff presented a
24  number of inmate appeals to McEwen requesting relief from

25

---

26  [11/] Plaintiff repeatedly references a civil litigation or civil lawsuit to
which he was a party, that was pending while the events alleged in the SAC took
27  place.  Plaintiff does not list a case number in the SAC.  However, in the
Opposition, Plaintiff identifies two different case numbers, 1:08-cv-1233 and
28  2:07-cv-1646, without specifying which one is the civil lawsuit he continuously
points to in the SAC.  (See Opposition at 11-12.)  The Court is unable to decipher
which case is the "civil lawsuit," and declines any invitation to guess.

11cv2333

1   retaliatory action taken by other prison officials.  (Id.)
2   McEwen denied all of these appeals.  (Id.)

3       Plaintiff alleges several causes of action against
4   McEwen.  Plaintiff alleges that McEwen violated his First
5   Amendment rights by retaliating against him for filing
6   prison grievances and the civil lawsuit.[12/]  (Id. at 31.)

7       Plaintiff alleges that his Eighth Amendment rights
8   were violated when he was kept in the ASU for a total of
9   fourteen months while awaiting transfer to another prison.
10  (Id. at 32.)  Plaintiff also alleges that his Eighth
11  Amendment rights were violated when McEwen failed to
12  "intervene and stop retaliatory action made by other
13  [D]efendants."  (Id.)

14      Additionally, Plaintiff alleges that his Fourteenth
15  Amendment rights were violated when McEwen declined to
16  follow the procedures delineated in Section 3335(d) and
17  Section 3335(e), and when he was subjected to a prolonged
18  stay at the ASU, which resulted in the loss of family
19  ties, television, jobs, a package, and library access.
20  (Id. at 8, 33-34).  Finally, Plaintiff alleges that his
21  Fourteenth Amendment rights were violated when McEwen
22  discriminated against him for being African-American, and
23  when McEwen failed to intervene on his behalf to prevent
24  other prison officials from retaliating against him.  (Id.
25  at 9, 34.)

26
27
28

_____

[12/] Plaintiff does not list appeal log numbers for these prison grievances.

11cv2333

### ii. __Allegations Regarding Defendant Villalobos__

Plaintiff alleges that on September 10, 2010, library technical assistant Villalobos terminated his access to the law library. (Id. at 10-11.) This caused Plaintiff to miss a discovery cutoff in the civil lawsuit, and therefore, his opponents did not produce documents to him. (Id. at 11.)

Plaintiff alleges that Villalobos told Plaintiff that he did not have a right to discovery because only defendants have a right to discovery during litigation. (Id.) Plaintiff alleges that each time he had a court deadline to meet, Villalobos denied him access to the law library. (Id.)

Plaintiff alleges that he suffered harm when Villalobos denied him access to the library because he could not retrieve his court mail, which only was delivered to the law library. (Id.) Moreover, Plaintiff could not conduct discovery on one of the defendants in the civil lawsuit. (Id.)

Plaintiff states that Villalobos violated California Code of Regulations Title 15, Section 3123(b) ("Section3123(b)").[13] (Id.) Additionally, Plaintiff says that Villalobos violated his First Amendment rights when

---

[13] Section 3123(b) states:

All inmates, regardless of their classification or housing status, shall be entitled to physical law library access that is sufficient to provide meaningful access to the courts. Inmates on PLU status may receive a minimum of 4 hours per calendar week of requested physical law library access, as resources are available, and shall be given higher priority to the law library resources. Inmates on GLU status may receive a minimum of 2 hours per calendar week of requested physical law library access, as resources are available.

11cv2333

she deliberately terminated Plaintiff's access to the law library and to the courts in retaliation to the civil lawsuit. (<u>Id.</u> at 31.)

### iii. <u>Allegations Regarding Defendants Flores and Vitela</u>

Plaintiff alleges that on November 5, 2010, correctional officers Flores and Vitela took outgoing mail that Plaintiff addressed to his daughter. (<u>Id.</u> at 12.) Flores and Vitela then made copies of the letters and sent them to the prison investigative services. (<u>Id.</u>)

After the prison investigative services received copies of Plaintiff's mail, they went to his daughter's house and took all of the letters Plaintiff had sent her. (<u>Id.</u>) As a result, Plaintiff's daughter's heart was broken, and she stopped writing to him. (<u>Id.</u>) Flores and Vitela repeated this same process with Plaintiff's other family members. (<u>Id.</u>)

Plaintiff alleges that Flores and Vitela were acting in retaliation for Plaintiff's civil lawsuit, which violated his First Amendment rights. (<u>Id.</u> at 13, 31.)

### iv. <u>Allegations Regarding Defendant Hardman</u>

Plaintiff alleges that on November 7, 2010, he was given an old pair of boxer shorts with the seat ripped out. (<u>Id.</u> at 13.) When Plaintiff sought to exchange the boxer shorts, correctional officer Hardman gave him a "bogus" rules violation ticket for destruction of property. (<u>Id.</u>)

Plaintiff alleges that Hardman violated his First Amendment rights because he issued a baseless rules

11cv2333

violation report in retaliation for the civil lawsuit. (Id. at 14, 31.) Plaintiff also claims that Hardman violated his Fourteenth Amendment rights because the rules violation ticket forced Plaintiff to go to the ASU, where security is more stringent than in the prison's general population. (Id. at 34.)

### v.  Allegations Regarding Defendant Alvarez

Plaintiff alleges that on October 28, 2010, correctional officer Alvarez refused to give Plaintiff his incoming mail until Plaintiff dropped the civil lawsuit. (Id. at 14.) Alvarez then walked away from Plaintiff with Plaintiff's mail in his hand. (Id.)

In response, Plaintiff tried to file a motion with the courts,[14]/ so that he could get his mail back from Alvarez. (Id.) Then, after picking up Plaintiff's outgoing mail, Alvarez removed pages from Plaintiff's motion in order to prevent Plaintiff from filing it. (Id.) Plaintiff later found out from the court that pages from his motion were missing.[15]/ (Id.) The court told Plaintiff to inform it if Plaintiff's ability to litigate that case was being hindered. (Id. at 14-15.)

In retaliation for Plaintiff's inmate appeals[16]/ and the court's order, Alvarez entered Plaintiff's cell and removed legal material, court documents, and a personal picture. (Id. at 15.)

---

[14]/ Plaintiff does not specify in which court he wanted to file the motion.

[15]/ It is unclear which court notified Plaintiff that pages from the motion were missing.

[16]/ Plaintiff does not specify the inmate appeals he is referring to.

11cv2333

Plaintiff alleges that Alvarez violated California Code of Regulations Title 15, Section 3130 ("Section 3130")[17/] when he refused to give Plaintiff his mail. (Id.)  Plaintiff also alleges that Alvarez violated California Code of Regulations Title 15, Section 3287(a)(3) ("Section 3287(a)(3)"),[18/] when he inspected Plaintiff's cell without notice. (Id.) Lastly, Plaintiff asserts that Alvarez violated Plaintiff's First Amendment right when Alvarez refused to turn over to Plaintiff legal and personal mail in retaliation for prison grievances and the civil lawsuit. (Id. at 31.)

### vi. Allegations Regarding Defendant Amezcua

Plaintiff alleges that on December 6, 2010, after returning from the exercise yard, he found his cell in disarray. (Id. at 16.) Plaintiff's bedding was pulled from his bed and thrown on the floor. (Id.) Plaintiff also found his legal papers scattered all over the cell. (Id.) Additionally, some of Plaintiff's papers were

---

[17/] Section 3130 states:

The California Department of Corrections and Rehabilitation (CDCR) encourages correspondence between inmates and persons outside the correctional facility.  The sending and receiving of mail by inmates shall be uninhibited except as specifically provided for in this article.  The Regulations contained in this article shall provide for the orderly processing of inmate mail and to give direction to staff, inmates, and their correspondents concerning facility mail requirements.  Mail shall be delivered to inmates, regardless of housing, unless it is contraband pursuant to section 3006, or is disturbing or Offensive Correspondence pursuant to Section 3135.

[18/] Section 3287(a)(3) states:

An inmate's presence is not required during routine inspections of living quarters and property when the inmate is not or would not otherwise be present.  During special inspections or searches initiated because the inmate is suspected of having a specific item or items of contraband in his or her quarters or property, the inmate should be permitted to observe the search when it is reasonably possible and safe to do so.

missing along with his legal books. (Id.) Plaintiff asked Amezcua what happened, and Amezcua told Plaintiff that his legal books and material were unauthorized, and that his legal mail was trash. (Id.) Plaintiff alleges that Amezcua was responsible for the destruction of the materials in Plaintiff's cell. (Id.)

Plaintiff contends that Amezcua violated California Code of Regulations Title 15, Section 3287(a)(2) ("Section 3287(a)(2)")[19] when he took Plaintiff's legal books and destroyed Plaintiff's other legal material. (Id.) Plaintiff also asserts that Amezcua violated his First Amendment rights because Amezcua was retaliating in response to Plaintiff's prison grievances and the civil lawsuit. (Id. at 17, 31.)

### vii.  Allegations Regarding Defendant Janda

On June 16, 2011, Plaintiff appeared before Associate Warden Janda. (Id. at 17.) Plaintiff explained to Janda that correctional officer Paramo set Plaintiff up to fight another prisoner and deliberately moved this prisoner to the cell adjacent to Plaintiff's cell in order to accomplish the task. (Id.)

Plaintiff alleges that he explained to Janda that he overheard the prisoner tell a floor officer that Paramo placed the prisoner into the cell adjacent to Plaintiff in

---

[19] Section 3287(a)(2) states:

Cell and property inspections are necessary in order to detect and control serious contraband and to maintain institution security. Such inspections will not be used as a punitive measure nor to harass an inmate. Every reasonable precaution will be taken to avoid damage to personal property and to leave the inmate's quarters and property in good order upon completion of the inspection.

order to "deal with [Plaintiff]." (Id.) And when the prisoner returned from the prison canteen, correctional officer Castro opened Plaintiff's cell door, which allowed the prisoner to attack Plaintiff. (Id.)

Plaintiff asked Janda to conduct a complete investigation regarding these allegations, and told Janda that the set-up was another attempt to improperly hold Plaintiff in the ASU. (Id. at 18.) Plaintiff alleges that Janda told him that he would be released from the ASU "on his next committee." (Id.)

On July 28, 2011, Plaintiff again appeared before Janda and the ICC to explain that he was illegally being held in the ASU, and that the ICC was in violation of Section 3335(d) and Section 3335(e). (Id.)

On September 1, 2011, Plaintiff told Janda that he thought Janda was conspiring with McEwen to hold Plaintiff in the ASU. (Id.) Plaintiff based this conclusion on the fact that he was only at CSP for thirty-three days before he was set up to be attacked by the white prisoners on August 8, 2010. (Id.) Also, Plaintiff pointed out to Janda that it took a court order to get his legal property back. (Id.)

Plaintiff told Janda that Janda was being deliberately indifferent to his safety because he failed to intervene and stop all of these retaliatory actions. (Id. at 19.) Plaintiff also informed Janda that he believed Janda was personally involved in this retaliatory scheme because Janda denied Plaintiff's inmate appeals. (Id.)

11cv2333

Plaintiff alleges that Janda violated Plaintiff's Fourteenth Amendment rights when Janda and the ICC failed to follow Section 3335(d) and Section 3335(e). (<u>Id.</u> at 19, 34) (<u>Id.</u>)

Plaintiff also alleges that Janda violated his First Amendment rights when Janda took retaliatory action against Plaintiff for filing prison grievances and the civil lawsuit. (<u>Id.</u> at 20, 31.)

Lastly, Plaintiff alleges that Janda violated Plaintiff's Eighth Amendment rights by refusing to inter-vene and stop retaliatory action taken by other defen-dants. (<u>Id.</u> at 32.)

### viii.   <u>Allegations Regarding Defendant Dominguez</u>

Plaintiff alleges that on March 20, 2011, correctional officer Dominguez deliberately gave Plain-tiff's mail to the prisoner that was incarcerated in the cell adjacent to Plaintiff. (<u>Id.</u> at 20.) When Plaintiff tried to address the issue with Dominguez, Dominguez pointed to her badge and told Plaintiff to write her up. (<u>Id.</u>)

A few weeks later, Plaintiff received information from a family member who was the addressee of the inter-cepted mail. (<u>Id.</u>) The family member told Plaintiff that she was receiving mail from another prisoner now, and some of the mail contained sexual content and threats. (<u>Id.</u>) Moreover, the family member told Plaintiff that she would no longer write to him. (<u>Id.</u>)

14

Plaintiff asserts that Dominguez violated Section 3130 when she intercepted Plaintiff's mail. (<u>Id.</u>) Plaintiff also claims that Dominguez violated his First Amendment rights because she was acting in retaliation to Plaintiff's prison grievances and the civil lawsuit. (<u>Id.</u> at 20, 31.)

### ix. <u>Allegations Regarding Defendant Paramo</u>

Plaintiff alleges that on April 21, 2011, correctional officer Paramo deliberately placed a prisoner in the cell adjacent to Plaintiff's, even though Plaintiff had previously been attacked by this prisoner. (<u>Id.</u> at 21.) That same day, Castro opened Plaintiff's cell door so the other prisoner could enter Plaintiff's cell and attack Plaintiff after returning from the prison canteen. (<u>Id.</u> at 22.) Plaintiff's thumb was injured and he was taken to the medical clinic for treatment. (<u>Id.</u>) Plaintiff states that Paramo was aware of the existing racial tension between both inmates, and nonetheless, set up the attack. (<u>Id.</u>)

Plaintiff alleges that Paramo knew that Plaintiff had been retaliated against because Paramo was advised of a pretrial conference that took place in the District Court for the Eastern District of California, in which Plaintiff complained about being attacked by white inmates and about deliberately being held in the ASU. (<u>Id.</u>)

Plaintiff alleges that Paramo was deliberately indifferent to Plaintiff's health and safety in violation of the Eighth Amendment. (<u>Id.</u> at 32.) Moreover, Plaintiff contends that Paramo violated Plaintiff's First

Amendment rights because he set Plaintiff up in retaliation for Plaintiff's prison grievances and the civil lawsuit. (Id. at 31.)

### x.  Allegations Regarding Defendant Castro

Plaintiff alleges that on the morning of April 22, 2011, correctional officer Castro deliberately opened Plaintiff's cell door allowing the inmate incarcerated in the cell next to Plaintiff to enter Plaintiff's cell and attack Plaintiff. (Id. at 23.) Castro did this with knowledge that the other inmate had attacked Plaintiff in the past. (Id.) Additionally, prior to the attack, Plaintiff told the men's advisory chairman[20] that he wanted to be moved because he feared that a problem could arise. (Id.)

Plaintiff asserts that Castro violated his First Amendment rights because he opened Plaintiff's cell door in retaliation for Plaintiff's prison grievances and the civil lawsuit. (Id. at 31.) Moreover, Plaintiff alleges that Castro violated Plaintiff's Eighth Amendment rights when he opened Plaintiff's cell door as to allow the attack. (Id. at 32.)

### xi. Allegations Regarding Defendant Lizarraga

Plaintiff alleges that on July 13, 2011, correctional officer Lizarraga deliberately gave Plaintiff a food tray that was contaminated with a concoction of bodily fluids. (Id. at 24.) Plaintiff became very sick after eating the food. (Id.) Plaintiff knew his food was

---

[20] Plaintiff does not provide the name of the men's advisory chairman.

poisoned because the inmate in the cell next to Plaintiff told Plaintiff that he helped Lizarraga contaminate the food. (Id.)

Additionally, on August 30, 2011, while escorting Plaintiff to a broken and dirty shower, Lizarraga deliberately slammed Plaintiff into a guard rail. (Id. at 25.) Plaintiff required medical care as a result. (Id.) Plaintiff alleges that Lizarraga slammed him after Plaintiff confronted him regarding the food poisoning. (Id.) Plaintiff also states that he did not provoke Lizarraga. (Id.)

Plaintiff asserts that Lizarraga violated his First Amendment rights because he acted in retaliation for Plaintiff's prison grievances and the civil lawsuit. (Id. at 25, 31.) Plaintiff also states that Lizarraga violated Plaintiff's Eighth Amendment right when he poisoned Plaintiff's food and slammed him into the guard rail for no reason. (Id. at 25, 33.)

### xii. **Allegations Regarding Defendant Zamora**

Plaintiff alleges that on July 15, 2011 he had an appointment with nurse Zamora because he was feeling ill from the food poisoning. (Id. at 26.) Zamora took Plaintiff's vital signs and told Plaintiff that he would get him medication for his fever and diarrhea. (Id.) But Plaintiff also claims that Zamora wrote Plaintiff's symptoms down on a paper towel, and then threw the paper towel away, in order to discard of any record that the appointment took place. (Id.)

11cv2333

Plaintiff then went to see Dr. Kornbluth, but was denied medical treatment because Dr. Kornbluth did not have any record of Plaintiff's medical condition. (Id.)

On October 21, 2011, Plaintiff again saw Zamora to tell him that he was still feeling ill. (Id. at 26-27.) Plaintiff told Zamora that Dr. Kornbluth was unable to render him treatment because Zamora threw away the paper towel. (Id. at 27.) Plaintiff asked Zamora not to write his symptoms down on a paper towel during this visit. (Id.)

Zamora told Plaintiff that this was just business. (Id.) Zamora explained to Plaintiff that he wanted Plaintiff to die so that they "could test his body for this disease." (Id.) Therefore, Zamora again wrote down Plaintiff's symptoms on a paper towel instead of on an inmate request form. (Id.)

Plaintiff alleges that Zamora violated his First Amendment rights because he was retaliating against Plaintiff's prison grievances and the civil lawsuit (Id. at 28, 31.) Plaintiff also states that Zamora violated Plaintiff's Eighth Amendment rights because he was deliberately indifferent to Plaintiff's medical needs. (Id. at 27, 33.)

### xiii.   Allegations Regarding Defendant Dr. Kornbluth

Plaintiff alleges that on July 17, 2011, he had an appointment with Dr. Kornbluth regarding the food poisoning. (Id. at 28.) Dr. Kornbluth refused to examine Plaintiff or listen to Plaintiff's problems. (Id.)

11cv2333

Rather, Dr. Kornbluth wanted to discuss grievances Plaintiff had filed against somebody else. (Id.) Kornbluth also told Plaintiff that he would order blood tests that he knew would not be Plaintiff's, so the tests would come out negative. (Id.) Kornbluth refused to treat Plaintiff for the stomach pain, vomiting, or diarrhea on this day. (Id.)

On August 9, 2011, Plaintiff again saw Dr. Kornbluth and told him that his stomach, back, kidney, and liver were hurting and that he had a "rusty taste on his tongue and his stomach was extremely hot." (Id.) Dr. Kornbluth denied Plaintiff medical treatment. (Id.) He told Plaintiff that his blood tests were negative and that "he was not going to do anything for the [P]laintiff because of his inmate appeals." (Id.) Dr. Kornbluth told Plaintiff that Plaintiff was deliberately being denied medical treatment because of the civil lawsuit. (Id. at 29.) Plaintiff then asked Dr. Kornbluth for a biopsy because CSP does not have a procedure that could detect all stomach infections. (Id.) Dr. Kornbluth replied that he would not allow Plaintiff to see anybody else, but would instead order more blood tests and have other staff members give blood at Plaintiff's expense. (Id.)

On August 17, 2011, Plaintiff was again seen by Dr. Kornbluth because he was still very sick. (Id.) Plaintiff told Dr. Kornbluth that the negative blood test results must have been a mixup. (Id.) Dr. Kornbluth pretended that Plaintiff had actually had a biopsy examination and the appropriate treatment, even though Plain-

11cv2333

tiff had not.  (Id.)  Dr. Kornbluth then told Plaintiff there was nothing he could do for Plaintiff, and had the guards escort Plaintiff back to his cell.  (Id.)

On September 20, 2011 Plaintiff again saw Dr. Kornbluth because of the same illness.  (Id. at 30.)  Dr. Kornbluth told Plaintiff that there was nothing he could do for him and left the room.  (Id.)

Upon hearing Dr. Kornbluth's diagnosis, head nurse Gray[21] ("Gray") told Dr. Kornbluth that he was wrong, and that other tests should be given to Plaintiff.  (Id.)  Dr. Kornbluth then became very angry and ordered Gray to leave the room.  (Id.)  Dr. Kornbluth said he would not treat Plaintiff no matter what.  (Id.)  Dr. Kornbluth then walked out of the room and had sergeant E. Uribe ("Uribe") escort Plaintiff back to his cell.  (Id.)  As Plaintiff was leaving the room, Dr. Kornbluth told Plaintiff "that his treatment of... [P]laintiff is how to train an elephant."  (Id.)

Plaintiff alleges that Dr. Kornbluth violated Plaintiff's First Amendment rights because he acted in retaliation for Plaintiff's prison grievances and the civil lawsuit.  (Id. at 30, 31.)  Additionally, Plaintiff states that Dr. Kornbluth violated his Eighth Amendment rights by acting deliberately indifferent to Plaintiff's serious medical needs.  (Id. at 33.)

---

[21] Plaintiff does not provide head nurse Gray's first name or initial.

11cv2333

## II. __Standard of Review__

1
2      A motion to dismiss for failure to state a claim
3   under Federal Rule of Civil Procedure 12(b)(6) "can be
4   granted only if it appears beyond doubt that the plaintiff
5   can prove no set of facts in support of his or her claim."
6   Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir.
7   1980); Balistreri v. Pacifica Police Department, 901 F.2d
8   696, 699 (9th Cir. 1990).

9      Plaintiff must allege "enough facts to state a claim
10  to relief that is plausible on its face." Bell Atlantic
11  Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has
12  facial plausibility when the plaintiff pleads factual
13  content that allows the court to draw the reasonable
14  inference that the defendant is liable for the misconduct
15  alleged." Aschcroft v. Iqbal, 556 U.S. 662, 678 (2009).
16  Therefore, a plaintiff must plead more than labels,
17  conclusions, or just the elements of a cause of action.
18  Id.  Additionally, courts construe all allegations of
19  material fact in favor of the nonmoving party. Cahill v.
20  Liberty Mutual Insurance Co., 80 F.3d 336, 337-38 (9th
21  Cir. 1996).  Thus, the Court will take all well-pleaded
22  facts as true.  Peloza v. Capistrano Unified School
23  District, 37 F.3d 517, 521 (9th Cir. 1994).

24     Further, Federal Rule of Civil Procedure 15(a)(2)
25  allows the trial court to grant leave to amend "when
26  justice so requires."  Unless the complaint cannot be
27  cured by allegations of additional facts, the Court should
28  grant leave to amend. Lopez v. Smith, 203 F.3d 1122, 1127
    (9th Cir. 2000).  The Court's discretion to freely grant

leave to amend is particularly relevant when a litigant is proceeding pro se.  <u>Id.</u> at 1131.

Additionally, so a pro se litigant does not repeat the errors, "before dismissing a pro se civil rights complaint for failure to state a claim, the district court must give the plaintiff a statement of the complaint's deficiencies."  <u>Karim-Panahi v. Los Angeles Police Department</u>, 839 F.2d 621, 623 (9th Cir. 1988).  However, courts should refrain from giving a pro se litigant the essential elements of a claim, which were not originally pled.  <u>Soffer v. City of Costa Mesa</u>, 798 F.2d 361, 363 (9th Cir. 1986) (citation omitted) (internal quotation marks omitted).

### III.   <u>Discussion</u>

#### A.   <u>First Amendment Retaliation Claims</u>

Plaintiff claims that Defendants Amezcua, Hardman, Alvarez, Dominguez, Villalobos, Castro, Flores, Vitela, and Zamora retaliated against Plaintiff because of Plaintiff's prison grievances and the civil lawsuit.  (SAC at 31.)

Defendants state that Plaintiff cannot simply allege "that unspecified orders or grievances were a defendant's motivating purpose in the illegal activity" to support his retaliation claim.  [Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss ("Motion to Dismiss") at 20.].[22/]  Defendants move to dismiss the

_____

[22/] Defendants do not move to dismiss the First Amendment retaliation claims with respect to Defendants Lizarraga, Paramo, or Kornbluth at this stage of the litigation.  (Motion to Dismiss at 13 n.2.)  Plaintiff's First Amendment retaliation claims against Defendants McEwen and Janda are addressed later in the

11cv2333

retaliation claims against Villalobos, Flores, Vitela, Hardman, Alvarez, Amezcua, Dominguez, Castro, and Zamora. (Id. at 21.)

A prisoner has a fundamental right to file prison grievances. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2004). "[B]ecause purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermines those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." Id.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Id. at 567-68.

Plaintiff does not need to show that his First Amendment rights were actually chilled, but only that Defendants' actions were intended to interfere with Plaintiff's exercising of his First Amendment rights, and would deter an ordinary person from exercising those rights. Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999). Moreover, "a retaliation claim may assert an injury no more tangible

_____

Report and Recommendation.

11cv2333

than a chilling effect on First Amendment rights." <u>Gomez v. Vernon</u>, 255 F.3d 1118, 1127 (9th Cir. 2001).

Defendants assert that Plaintiff's allegations against Villalobos, Amezcua, Dominguez, Castro, and Zamora do "not allege any specific protected speech in which [Plaintiff] engaged, nor does he allege how these [D]efendants were involved or knew about the protected speech." (Motion to Dismiss at 21.)  Rather, "Plaintiff only includes conclusory language in his summary of claims that [these Defendants] were retaliating against him for maintaining lawsuits and prison grievances at [CSP]." (<u>Id.</u>)

The Court agrees with Defendants.  In the Statement of Facts in the SAC, Plaintiff follows the same pattern in the allegations against Defendants Villalobos, Amezcua, Dominguez, Castro, and Zamora.  In sum, Plaintiff alleges facts, and then states that Defendants' "conduct would deter a prisoner of ordinary firmness from vindicating his constitutional rights through the court system, and these retaliatory actions place[d] a chill[ing] effect upon the Plaintiff's First Amendment rights."  (<u>See, e.g.</u>, SAC at 17.)

Plaintiff must allege facts showing causation between the allegedly retaliatory acts taken by Villalobos, Amezcua, Dominguez, Castro, and Zamora and the exercising of his First Amendment rights.  The pleading standard under Federal Rule of Civil Procedure 8(a) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  <u>Iqbal</u>, 556 U.S. at 678.  For

example, Plaintiff could plead that Defendants knew that Plaintiff engaged in protected speech, how they knew, and thereafter did something that led Plaintiff to the inference that Defendants were acting in retaliation for his protected speech.  See Pratt v. Rowland, 65 F.3d 802, 807-808 (9th Cir. 1995) (indicating that Plaintiff must show probative evidence to prove the imperative link of causation in a retaliation claim, and that timing alone is not sufficient to establish that connection).

If Plaintiff wants his Third Amended Complaint to survive the pleading stage as against Defendants Villalobos, Amezcua, Dominguez, Castro, and Zamora, he must allege facts that support causation between their adverse actions and the exercising of his First Amendment rights.  He cannot simply list all of the allegedly adverse actions taken against him at CSP, and then conclude that these must have been in retaliation for prison grievances and the civil lawsuit.

As to Defendants Flores, Vitela, Hardman, and Alvarez, Defendants argue that "Plaintiff again only alleges generally that these defendants were retaliating against him for unspecified court orders and grievances." (Motion to Dismiss at 21.)

The Court agrees with Defendants regarding Plaintiff's allegations against Flores, Vitela, and Hardman. In his allegations against these Defendants, Plaintiff simply alleges an adverse action or actions that were taken against him, and then asserts that these actions

were taken in retaliation to unspecified court orders, court litigation, and/or prison grievances.

However, Plaintiff does a better job of stating a cause of action for retaliation against Alvarez. In the allegations against Alvarez, Plaintiff specifically states that Alvarez told Plaintiff that Plaintiff would not get his mail until he dropped the civil lawsuit. These allegations at least show that Alvarez could have known about the protected speech, and how Plaintiff could have known that Alvarez was aware of the protected speech.[23] But to survive the pleading stage, Plaintiff is advised to provide more details about the civil lawsuit he continuously references and also more details regarding the prison grievances. Such details may include the case number of the civil lawsuit, the date the civil lawsuit was commenced, the court in which the civil lawsuit was filed, and the appeal log numbers to the prison grievances.

Therefore, the Court RECOMMENDS that Plaintiff's retaliation claims against Villalobos, Flores, Vitela, Hardman, Alvarez, Amezcua, Dominguez, Castro, and Zamora be DISMISSED WITHOUT PREJUDICE and with leave to amend.

Pursuant to Federal Rule of Civil Procedure 8(a), the Court will not accept vague or conclusory allegations. In the Third Amended Complaint, Plaintiff must allege a causal connection between the adverse actions taken against him and his exercising of protected speech. In

---

[23] The Court also directs Plaintiff to the allegations in the SAC against Dr. Kornbluth as an example of the proper way to plead a retaliation claim.

other words, Plaintiff must plead facts to support the contention that Defendants were retaliating against Plaintiff for filing prison grievances and the civil lawsuit; not just that Defendants took adverse action against him and that he had unidentified prison grievances and a civil lawsuit pending at the time.

### B.  **Plaintiff's Access to the Courts Claims**

#### i.  **Access to the Courts Claim Against Defendant Villalobos**

Plaintiff alleges that Villalobos terminated his access to the prison law library in violation of Section 3123(b).  (SAC at 11.)  Plaintiff contends that Villalobos' actions caused him to miss a discovery cutoff deadline in a civil lawsuit.  (<u>Id.</u>)

Defendants argue that "Plaintiff does not allege that the civil suit with which... Villalobos interfered with related to his sentence or conditions of confinement."  (Motion to Dismiss at 22.)  Moreover, "[e]ven if Plaintiff had described the nature of the suit, he does not allege an actual injury necessary to support a claim for access to court."  (<u>Id.</u> at 23.)

Prisoners have a constitutional right to access the courts.  <u>Lewis v. Casey</u>, 518 U.S. 343, 350 (1996). This fundamental right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries..."  <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977).  And prison officials are prohibited "from actively interfering

with inmates' attempts to prepare legal documents..." <u>Lewis</u>, 518 U.S. at 350.

To establish a cause of action for denial of access to the courts, Plaintiff must show that an inadequacy in the prison's legal access program caused him actual injury. <u>Id.</u> at 350-55. "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." <u>Id.</u> at 351. "[T]he inmate... must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."[24]    <u>Id.</u>

As previously mentioned, Plaintiff provides the Court with two case numbers in his Opposition. (Opposition at 11, 12.)   In both case number 08cv1233 and 07cv1646, filed in the District Court for the Eastern District of California, Plaintiff sued at least one prison official regarding the conditions of his confinement. [<u>See generally</u> Second Amended Complaint for Civil Rights Violation Under Color of State Law 42 U.S.C. § 1983, No. 1:08-cv-01233 (E.D. Cal. Dec. 15, 2009), ECF No. 37; Second Amended Complaint for Civil Rights Violation Under

---

[24] The Supreme Court gave examples of what might constitute actual injury.

[The inmate] might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

<u>Lewis</u>, 518 U.S. at 351.

11cv2333

Color of State Law 42 U.S.C. § 1983, No. 07cv1646 (E.D. Cal. Apr. 28, 2008), ECF no. 12.]  The Court's review of those lawsuits shows that they pertained to Plaintiff's conditions of confinement.[25/]

However, Defendants also contend that Plaintiff "does not allege an actual injury necessary to support a claim for access to the courts" because Plaintiff was not 'shut out of court.'"  (Motion to Dismiss 23.)

Plaintiff states that as a result of Villalobos' actions, he missed a court deadline, which resulted in the dismissal of a defendant in one of the civil lawsuits. (Opposition at 11.)  The Court interprets this to mean that Plaintiff alleges he was denied access to the courts, and suffered actual injury, because his causes of action against that defendant were dismissed.

Plaintiff does not specify which defendant was dismissed from which civil lawsuit and how missing the discovery deadline resulted in dismissal of that defen- dant.  See Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009) (indicating that, in an access to the courts claim, there is a causation requirement, and the plaintiff must show that prison officials impeded his efforts to proceed with nonfrivolous claims).  Also, Plaintiff does not identify "a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be

---

[25/] The Court also notes that Plaintiff appears to point to case number 08-cv-01233 as the case he is referring to regarding the access to the courts claim against Villalobos.

brought."[26/]  <u>Harbury</u>, 536 U.S. at 415.  "There is, after all, no point in spending time and money to establish the facts constituting denial of access, when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element."  <u>Id.</u>

As currently pled, the Court concludes that Plaintiff's access to the courts claim does not state a cause of action against Villalobos.  Therefore, the Court RECOMMENDS that Plaintiff's access to the courts claim against Villalobos be DISMISSED WITHOUT PREJUDICE, with leave to amend.  In the Third Amended Complaint, to state of cause of action for denial of access to the courts against Villalobos, Plaintiff should state the civil lawsuit's case number, name the dismissed defendant, and allege facts showing that he missed the discovery deadline, which caused a nonfrivolous lawsuit against that defendant to be dismissed.  For example, Plaintiff should explain what the sought discovery would have shown, and why the discovery would have prevented the court from dismissing the unnamed defendant from the civil lawsuit.

### ii. Access to the Courts Claim Against Defendant Alvarez

Plaintiff alleges that Alvarez refused to give Plaintiff his mail until Plaintiff dropped the civil lawsuit.  (SAC at 14.)  In hopes of getting his mail,

---

[26/] A plaintiff must do this in a backward-looking access claim.  <u>Christopher v. Harbury</u>, 536 U.S. 403, 415 (2002).  A backward-looking access claim involves allegations of a previously lost or impaired claim caused by a defendant's inappropriate conduct.  <u>Id.</u> at 414.

Plaintiff then "filed a motion with the courts about this matter." (Id.)

Plaintiff alleges that Alvarez tried to prevent Plaintiff from filing the motion. (Id.)  To accomplish this, Alvarez removed pages from the motion after he picked up Plaintiff's outgoing mail.  (Id.)  When the court received the motion, Plaintiff was notified that some of the pages were missing.  (Id.)  The court told Plaintiff that if Alvarez continued to hinder his ability to litigate, then Plaintiff should inform the court.[27] (Id. at 14-15.)

Defendants contend that Plaintiff's access to the courts claim against Alvarez should be dismissed.  (Motion to Dismiss at 22.)  Again, Defendants argue that Plaintiff was not denied access to the courts and that Plaintiff did not suffer actual injury.  (Id. at 23.)  Rather, all that resulted from Alvarez's alleged conduct was that Plaintiff had to re-allege that he had exhausted all of his administrative remedies.  (Id.)  Moreover, Plaintiff received an invitation from the court to notify it if Villalobos continued to hinder his ability to litigate.  (Id.)

Plaintiff responds that the materials Alvarez took were "essential to court access and are not just property."  (Opposition at 15.)

---

[27] The Court is unsure whether Plaintiff is alleging that Alvarez denied him access to the courts.  The Court views Plaintiff's claim against Alvarez as another First Amendment retaliation claim.  Since Defendants move to dismiss Plaintiff's access to the courts claim against Alvarez, the Court examines the arguments.

The Court agrees with Defendants.  Plaintiff fails
to explain how Alvarez's actions denied him access to the
courts.  Plaintiff does not allege that he was never able
to file the motion from which Alvarez allegedly removed
pages.  If Plaintiff wants to assert that Alvarez denied
him access to the courts, in the Third Amended Complaint,
he must explain how Alvarez's actions effectively denied
him access to the courts.

Therefore, the Court RECOMMENDS that Plaintiff's
claim against Alvarez for denying Plaintiff access to the
courts be DISMISSED WITHOUT PREJUDICE, with leave to
amend.

**C.**  **Plaintiff's Substantive Due Process Claims**
**Against Defendants Paramo, Castro, Zamora,**
**Lizarraga, and Kornbluth**

Plaintiff alleges that Defendants Paramo, Castro,
Zamora, Lizarraga, and Kornbluth violated his Eighth
Amendment rights.  (SAC at 32-33.)

"Out of an abundance of caution, Defendants move to
dismiss any due process claims arising from these allega-
tions as duplicative of Plaintiff's Eighth Amendment
Claims."  (Motion to Dismiss at 24.)

Plaintiff responds that he has alleged racial
discrimination as applying generally to his entire com-
plaint, and therefore, any due process claim would not be
excessive. [Opposition at 18 ("Plaintiff alleges racial
discrimination over his overall complaint under the
Fourteenth Amendment...")].  Plaintiff also states that
"[t]he Fourteenth Amendment forbids a state to deny any

person within its jurisdictions the equal protection of the law." (Id.)

Plaintiff misconstrues Defendants' argument. Plaintiff's response is grounded in the Equal Protection Clause of the Fourteenth Amendment. Defendants move to dismiss substantive *due process claims* arising from Plaintiff's Eighth Amendment claims. (Motion to Dismiss at 24.)

"[T]he Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners... where the deliberate use of force is challenged as excessive and unjustified." Whitley v. Albers, 475 U.S. 312, 327 (1986).

The Court does not find allegations in the SAC regarding violations of Plaintiff's due process rights arising out of Plaintiff's Eighth Amendment claims against Paramo, Castro, Zamora, Lizarraga, and Kornbluth. If Plaintiff seeks to assert due process claims against these Defendants, Plaintiff's Eighth Amendment claims against Paramo, Castro, Zamora, Lizarraga, and Kornbluth are more appropriately analyzed under the Eighth Amendment, not the Due Process Clause of the Fourteenth Amendment.[28/] See Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) ["After conviction, the Eighth Amendment 'serves as the primary

---

[28/] The Court declines to comment on whether Plaintiff might allege a substantive due process claim if he can allege that Defendants were reckless or grossly negligent. See Daniels v. Williams, 474 U.S. 327, 334 n.3 (1986).

11cv2333

source of substantive protection...in cases...where the deliberate use of force is challenged as excessive and unjustified.' Any protection that 'substantive due process' affords convicted prisoners against excessive force, we have held, at best redundant of that provided by the Eighth Amendment." (quoting <u>Whitley</u>, 475 U.S. at 327) (internal citations omitted)].

Therefore, the Court RECOMMENDS that any due process claims arising out of Plaintiff's Eighth Amendment claims against Paramo, Castro, Zamora, Lizarraga, and Kornbluth be DISMISSED WITH PREJUDICE, without leave to amend.

D. **Plaintiff's Procedural Due Process Claims Against Defendants Alvarez, Amezcua, and Dominguez**

Plaintiff alleges that on October 28, 2010, Alvarez refused to give him his legal and personal mail in violation of Section 3130. (SAC at 14-15.) Plaintiff alleges that, on that same date, Alvarez took Plaintiff's legal material and personal picture in violation of Section 3287(a)(3). (<u>Id.</u> at 15.) In response, Plaintiff filed a motion with a court to seek an order for the turn over of his property, but Alvarez removed pages from the motion. (<u>Id.</u> at 14.) Plaintiff asserts that Alvarez was retaliating against Plaintiff's civil lawsuit. (<u>Id.</u>)

Also, Plaintiff alleges that on December 6, 2010, Amezcua destroyed Plaintiff's legal material and legal books in violation of Section 3287(a)(2) while Plaintiff was exercising on the prison yard. (<u>Id.</u> at 16.) Plaintiff asserts that this too was a retaliatory action that chilled his First Amendment rights. (<u>Id.</u> at 17.)

34

Additionally, Plaintiff alleges that on March 20, 2011, Dominguez deliberately gave Plaintiff's personal mail to the prisoner in the cell located adjacent to Plaintiff, which violated Section 3130.  (<u>Id.</u> at 20.)  This was also done in retaliation to "court litigation and inmate appeals."  (<u>Id.</u>)

Defendants argue that to the extent that Plaintiff "is seeking to proceed on a claim of having been deprived of certain items of personal property," he cannot do so.  (Motion to Dismiss at 25.)  Defendants reason that Plaintiff already has a remedy for the deprivation of his property.  (<u>Id.</u>)  Namely, California Government Code, Sections 900, et seq., which provide a remedy for tort claims against public officials.  (<u>Id.</u>)

In response, Plaintiff rehashes the allegations against Amezcua and Dominguez and emphasizes the validity of the First Amendment retaliation claims.  (Opposition at 14, 15.)  Regarding Alvarez, Plaintiff contends that the legal material was not "just property," but was also essential for him to access the court.[29]  (<u>Id.</u> at 15.)

The Court does not believe that Plaintiff sought to allege that Defendants Alvarez, Amezcua, or Dominguez violated his procedural due process rights.  However, because Defendants proceed out of caution, the Court will address the arguments.

The Due Process Clause protects prisoners from being deprived of property without the due process of law.

---

[29]  The Court has already addressed Plaintiff's access to the courts claim against Alvarez.

<u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974).  Intentional deprivation of property is actionable under the Due Process Clause, but a negligent or unauthorized deprivation is not.  See <u>Hudson v. Palmer</u>, 468 U.S. 517, 532 n.13 (1984); <u>see also</u> <u>Daniels</u>, 474 U.S. at 330-31).  "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." <u>Hudson</u>, 468 U.S. at 533.  An unauthorized deprivation is one "in which the state administrative machinery did not and could not have learned of the deprivation until after it had occurred." <u>Piatt v. MacDougall</u>, 773 F.2d 1032, 1036 (9th Cir. 1985).

Plaintiff does not argue that Alvarez, Amezcua, and Dominguez were authorized to take his property.  To the contrary, the Court finds that Plaintiff implicitly acknowledges that Alvarez, Amezcua, and Dominguez acted randomly because he alleges that they violated sections of California Code of Regulations.  Alvarez, Amezcua, and Dominguez were not acting under the State's procedures, regulations, or statutes, and therefore, if a post-deprivation remedy is available, Plaintiff cannot state a claim for violation of his due process rights.  See <u>King v. Massarweh</u>, 782 F.2d 825, 827 (9th Cir. 1986) (without a showing of deprivations occurring due to deliberate, non-random state procedures, no procedural due process claim exists).

11cv2333

California law provides an adequate post-deprivation remedy.  <u>See</u> Cal. Gov't Code §§810-895; <u>see</u> <u>also</u> <u>Barnett v. Centoni</u>, 31 F.3d 813, 816-17 ("California law provides an adequate post-deprivation remedy for any property deprivations.").  In the event that Plaintiff is asserting a due process violation against Alvarez, Amezcua, and Dominguez, the Court RECOMMENDS that these claims be DISMISSED WITH PREJUDICE, without leave to amend.

### E.   **Plaintiff's Due Process Claim Against Defendant** **Hardman**

Plaintiff alleges that Hardman violated his due process rights under the Fourteenth Amendment when Hardman issued Plaintiff an unwarranted rules violation ticket for the destruction of state property. (SAC at 34.)

Defendants argue that prisoners do not have a constitutional right to be free from wrongfully issued disciplinary reports. (Motion to Dismiss at 26.)

Plaintiff responds that Hardman violated his "due process and liberty interest by subjecting [Plaintiff] to a higher security level." (Opposition at 12.)

The Second Circuit held that "the prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." <u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2d Cir. 1986); <u>see</u> <u>also</u> <u>Buckley v. Gomez</u>, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997) (adopting the Second Circuit's conclusion). Due process only requires that Plaintiff be granted a hearing

regarding the rules violation report that Hardman issued.
<u>See</u> <u>Wolff</u>, 418 U.S. at 557-58 (concluding that a hearing
is required when a prisoner's liberty interests are at
stake); <u>see</u> <u>also</u> <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333
(1976) ("This Court consistently has held that some form
of hearing is required before an individual is finally
deprived of a property interest.")

The Court agrees with the Second Circuit's conclu-
sion.  The Court presumes that Plaintiff received a
hearing on the rules violation report because he does not
state any allegations that he did not.  If Plaintiff did
not receive a hearing on the rules violation report for
destruction of property, then he may present a due process
claim.  However, Plaintiff's due process rights were not
violated just because he was issued an unwarranted rules
violation report.  (<u>See</u> SAC at 13.)

Therefore, the Court RECOMMENDS that Plaintiff's
claim against Hardman for violation of his due process
rights be DISMISSED WITHOUT PREJUDICE, with leave to
amend.

### F. **Plaintiffs Claims Against McEwen and Janda**

Plaintiff brings claims against McEwen and Janda for
violating his First Amendment rights, his Eighth Amendment
rights, and his Fourteenth Amendment rights. (<u>Id.</u> at 31-
34.)

Defendant contends that "[b]ecause Plaintiff does
not state a claim under the First, Eighth, or Fourteenth
Amendment against McEwen and Janda, these two Defendants

should be dismissed from the case." (Motion to Dismiss at 19.)

### i. Plaintiff's Allegations That Defendants McEwen And Janda Failed to Supervise Their Subordinates

Plaintiff alleges that McEwen and Janda failed "to intervene and stop retaliatory action made by other [D]efendants..." (SAC at 32.)

Defendants contend that McEwen and Janda cannot be liable for failing to supervise their subordinates. (Motion to Dismiss at 14.)[30/]

Defendants correctly assert that there is no respondeat superior liability under 42 U.S.C. § 1983. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). But "[a] supervisor is liable under § 1983 for a subordinate's constitutional violations 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'" Maxwell v. County of San Diego, 708 F.3d 1075, 1086 (9th Cir. 2013) (quoting Taylor, 880 F.2d at 1045).

However, if the supervisor is not directly involved in the improper conduct, then he is only liable if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Mackinney v. Nielsen, 69 F.3d 1002, 1008 (9th Cir. 1995)

---

[30/] The Court is unsure whether Plaintiff brings a claim against McEwen and Janda for their alleged failure to supervise. The Court believes that Plaintiff intended to bring an Eighth Amendment claim against McEwen and Janda arising out of the allegations that they failed to intervene. That claim is addressed in the next section of the Report and Recommendation. Since Defendants seek to dismiss Plaintiff's claims against McEwen and Janda for failing to supervise their subordinates, the Court examines Defendants' arguments. Further, the Court is unable to locate Plaintiff's response to Defendants' arguments on this point.

11cv2333

[quoting <u>Redman v. County of San Diego</u>, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (internal quotation marks omitted)]; <u>see also</u> <u>Jeffers v. Gomez</u>, 267 F.3d 895, 915 (9th Cir. 2001).

Plaintiff alleges that he told McEwen about retaliatory actions taken against him by other Defendants, but McEwen failed to intervene. (SAC at 9.) The Court is unsure whether Plaintiff is alleging that he told McEwen that other Defendants were retaliating against him, and Defendants continued to do so while McEwen idly stood by, or whether Plaintiff only notified McEwen after all of the retaliation took place.[31]

If Plaintiff alleges the former, the Court believes that McEwen could be liable for failing to supervise the other Defendants. <u>See, e.g.</u>, <u>Taylor</u>, 880 F.2d at 1046 (stating that deputy attorney general who told the court that he would talk to prison officials about misconduct had to know "of specific instances of misconduct by prison officials and fail[] to act to prevent them" in order to preclude summary judgment); <u>Strong v. Woodford</u>, 428 F. Supp. 2d 1082, 1086 (C.D. Cal. 2006) ("A supervisor may be held liable when he is put on notice of wrongful conduct and fails to investigate or correct the violation.").

However, if Plaintiff alleges the latter, then a causal connection between McEwen's conduct and the retaliatory actions taken by other officials does not exist.

---

[31] Plaintiff states that on February 17, 2011, he submitted inmate appeals to McEwen requesting relief from the retaliation. (SAC at 8.) However, some of the retaliatory actions took place before this date, and some took place after this date.

It would be impossible for McEwen to prevent others' impermissible conduct if he did not learn about that conduct until after it occurred.   Therefore, the Court RECOMMENDS that Plaintiff's claims against McEwen be DISMISSED WITHOUT PREJUDICE, with leave to amend.   Plaintiff may only allege retaliatory actions that took place after Plaintiff put McEwen on notice that these or similar actions might occur, and present facts that show McEwen disregarded Plaintiff's warning.

Plaintiff also alleges that Janda "failed to intervene and stop these retaliatory actions and that [Janda] was personally involved because he had already denied [nine] of [Plaintiff's] inmate appeals pointing out these retaliatory efforts made by the above [D]efendants." (SAC at 19.)

As currently pled, the Court believes that Plaintiff put Janda on notice *after* the retaliatory actions had taken place.   Plaintiff must show that Janda knew of the alleged constitutional violations, and failed to investigate or correct the conduct.   Therefore, like Plaintiff's failure to supervise claims against McEwen, the Court RECOMMENDS that Plaintiff's claims against Janda be DISMISSED WITHOUT PREJUDICE, with leave to amend.

ii. **Plaintiff's Allegations That Defendants McEwen And Janda Violated His Eighth Amendment Rights When They Failed To Intervene**

Plaintiff alleges that he spoke directly to McEwen and Janda and addressed administrative appeals to both of them.   (Id. at 9, 32.)   Plaintiff further alleges that

11cv2333

these Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when they acted deliberately indifferent to retaliatory actions taken by other Defendants. (<u>Id.</u> at 9, 32.)

Defendants contend that Plaintiff cannot plead a violation of the Eighth Amendment unless he has a "constitutional right to something such as medical care, or food and water..." (Motion to Dismiss at 17.) Defendants state that "McEwen and Janda were not providing medical care or otherwise supervising Plaintiff's conditions of confinement," and therefore cannot be held liable for violating his Eighth Amendment rights. (<u>Id.</u>)

Plaintiff contends that Defendants have failed to apply the standard that the Supreme Court announced in <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994). (Opposition at 4.)

"The Eighth Amendment prohibits cruel and unusual punishment of a person convicted of a crime." <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000). Prison officials "must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of inmates.'" <u>Farmer</u>, 511 U.S. at 832. "In particular... prison officials have a duty... to protect prisoners from violence at the hands of other prisoners." <u>Id.</u> at 833 (citation omitted) (internal quotation marks omitted). "[I]t is also true that a prison official can violate a prisoner's Eighth Amendment rights by failing to intervene." <u>Robins</u>

v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995) (denying Defendants' motion for summary judgment because they did not provide affidavits stating that they did not have the opportunity to intervene).

Defendants do not address Plaintiff's Eighth Amendment claim arising from the standpoint of failure to intervene. Rather, Defendants argue that Plaintiff had no constitutional right to his appeal, and therefore, no Eighth Amendment violation took place. The Court believes that the crux of Plaintiff's Eighth Amendment claim against McEwen and Janda is their failure to intervene. [See SAC at 32 ("Defendants L.S. McEwen and G.J. Janda violated [Plaintiff's] Eighth Amendment right to be free from cruel and unusual punishment by refusing to intervene and stop retaliatory action made by other [D]efendants...) Since Defendants only address Plaintiff's Eighth Amendment claims in the supervisory context, the Court declines to recommend dismissal of Plaintiff's claims sua sponte.

Therefore, the Court RECOMMENDS that Defendants' motion to dismiss Plaintiff's Eighth Amendment claims, as they pertain to McEwen and Janda's failure to intervene be DENIED.

> ### iii.  Plaintiff's Allegations That Defendants McEwen And Janda Violated His Four-teenth Amendment Due Process Rights When They Failed To Hear His Appeals

Plaintiff alleges that on July 7, 2010, he wrote to McEwen to alert him that Plaintiff sought to exhaust his administrative remedies in order to have his legal and personal property returned. (Id. at 6.) Plaintiff

alleges that McEwen did not respond to Plaintiff's appeal. (Id.)  Plaintiff also alleges that Janda denied nine of Plaintiff's inmate appeals regarding retaliatory actions taken by other Defendants.  (Id. at 19.)

Defendants contend that "[r]egardless of whether these Defendants did or did not hear the appeals, a defendant cannot be liable for his participation in the appeals process."  (Motion to Dismiss at 16.)

Plaintiff contends that "[g]rievances filed through an official grievance procedure are constitutionally protected."  (Opposition at 5.)

Courts engage in a two-step analysis when determining whether the Due Process clause has been violated. Swarthout v. Cooke, 131 S. Ct. 859, 861 (2011).  "[The Court] first asks whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient."  Id. (recognizing that the Ninth Circuit creates a liberty interest in parole) [(citing Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 460 (1989)].

"Inmates lack a separate constitutional entitlement to a specific grievance procedure."  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) [citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)].  Plaintiff has no cause of action against McEwen or Janda under the Fourteenth Amendment arising from the prison appeals process because he lacks a protected liberty interest.  See Wilkinson v. Austin, 545 U.S. 209, 221 (2005) ("The

44

Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake.").

Therefore, the Court RECOMMENDS that Plaintiff's Fourteenth Amendment claims against McEwen and Janda that arise out of their failure to respond to Plaintiff's appeals be DISMISSED WITH PREJUDICE, without leave to amend.

### iv. <u>Plaintiff's First Amendment Retaliation Claims Against McEwen and Janda</u>

Plaintiff alleges that he filed an inmate appeal on August 1, 2010. (SAC at 6.)  The next day, Plaintiff was sent to a prison yard at CSP where racial tension existed between black and white prisoners.  (<u>Id.</u>)  Plaintiff alleges that McEwen did this in retaliation for the inmate appeal.  (<u>Id.</u>)  Additionally, on August 8, 2010, in retaliation for a court order and inmate appeals filed against McEwen, Plaintiff was set up to be attacked by a group of white prisoners.  (<u>Id.</u> at 7.)  Plaintiff also alleges that he was held in the ASU six months too long in retaliation for the civil litigation. (<u>Id.</u>)

The Court is unable to find any specific factual allegations against Janda pertaining to a potential First Amendment violation.  Rather, Plaintiff concludes that various acts taken by Janda "would deter a prisoner of ordinary firmness from vindicating his constitutional rights through the court system," and that Janda was

11cv2333

acting for retaliation for Plaintiff's prison grievances and the civil lawsuit. (Id. at 20, 31.)

Defendants argue that "a plaintiff cannot state a claim under the First Amendment arising out of the appeals process." (Motion to Dismiss at 17.)  In essence, Defendants assert that McEwen and Janda cannot be held liable for denying Plaintiff access to the courts because they allowed him to exhaust his administrative remedies, and now Plaintiff has filed the SAC in this Court.  (See id. at 18.)

Plaintiff responds that McEwen and Janda retaliated against him, which threatened his exercise of protected speech.  (Opposition at 7.)

To refresh, "[w]ithin the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes, 408 F.3d at 567-68.

As Plaintiff correctly points out, timing can provide probative evidence of retaliation.  (See Opposition at 8); see also Pratt, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent.").  Plaintiff alleges that he has shown causation because "he has stated a chronology of events from which retaliation may plausibly be inferred." (Opposition at 8.)

Plaintiff alleges that he was sent to another prison yard in CSP that had racial tension just one day after he filed an administrative appeal.  Also, Plaintiff alleges that he was set up to be attacked just three days after obtaining a favorable court order.  The Court believes that the proximity of these events has some probative value that could show McEwen was retaliating against Plaintiff.

Moreover, Plaintiff alleges that on August 1, 2010, he informed McEwen of his intent to exhaust his administrative remedies.  On August 5, 2010, a court order directed McEwen to turn over Plaintiff's property.  The Court believes that these events should have put McEwen on notice that Plaintiff intended to file a grievance or that Plaintiff had a pending civil lawsuit.

However, Plaintiff fails to allege that McEwen knew about the court order.  Further, Plaintiff fails to allege that McEwen's actions did not advance a legitimate correctional goal.  Additionally, Plaintiff does not allege any facts supporting the contention that McEwen was responsible for Plaintiff's being attacked.  Moreover, Plaintiff does not allege facts supporting his contention that McEwen held him in the ASU for six months too long because he was retaliating to the civil lawsuit.  Therefore, the Court RECOMMENDS that Plaintiff's claims against McEwen be DISMISSED WITHOUT PREJUDICE, with leave to amend.

Additionally, since Plaintiff failed to allege any specific facts that would show Janda retaliated against

him for engaging in protected speech, the Court RECOMMENDS that Plaintiff's retaliation claims against Janda be DISMISSED WITH PREJUDICE, without leave to amend.

### v. **Plaintiff's Eighth And Fourteenth Amendment Claims Against Defendants McEwen And Janda Arising From Their Work On The Classification Committee**

Plaintiff alleges that his Eighth Amendment and Fourteenth Amendment rights were violated when he was kept in the ASU for a total of fourteen months while awaiting transfer to another prison. (SAC at 8-9, 18, 32.) Plaintiff states that his Fourteenth Amendment rights were violated when McEwen and Janda failed to comply with Section 3335. (Id. at 33-34). Lastly, Plaintiff alleges that McEwen and Janda conspired to hold Plaintiff in the ASU. (Id. at 18.)

Defendants argue that Plaintiff "does not have a due process right to a particular classification within the prison system." (Motion to Dismiss at 18.) Additionally, Defendants argue that "administrative segregation is simply not atypical or a significant hardship in retaliation to the ordinary incidents of prison life." (Id. at 19.)

Plaintiff argues that "prisoners have a liberty interest in being released on time in conformity with the sentence imposed," and in excessive confinement cases, "prison officials can't just sit on [their] duff and not do anything." (Opposition at 9.)

The Due Process Clause only protects interests that arise from the Clause itself or state law. Chappell v.

<u>Mandeville</u>, 706 F.3d 1052, 1062 (9th Cir. 2013).  The Court engages in a two-step analysis to determine whether Defendants' actions violated Plaintiff's due process rights.  <u>Ingraham v. Wright</u>, 430 U.S. 651, 672 (1977).  The Court asks, were Plaintiff's protected interests implicated?  If so, what procedures constitute due process of law?  <u>Id.</u>

Further, if the liberty interest was created by state law, then the question is whether the law "imposes atypical and significant hardship on the inmate in relation to ordinary incidents of prison life."  <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995) (holding that disciplinary confinement of inmates does not itself implicate protected liberty interests).

California Code of Regulations Title 15, Section 3335(a) ("Section 3335(a)") permits correctional staff to place an inmate in the ASU "when an inmate's presence in an institution's general inmate population presents an immediate threat to the safety of others..."  Once an inmate is placed in the ASU, an ICC must review the inmate's placement and either "retain the inmate in segregation or release [him] to general population."  <u>Id.</u> § 3335(c).  If the ICC retains the prisoner in segregation, the prisoner's placement shall be sent to a CSR "for review and approval" within thirty days of the initial ICC review.  <u>Id.</u> § 3335(d).  Then, the ICC shall review the detention in segregation at least every ninety days until the rules violation report is adjudicated.  <u>Id.</u> § 3335(d)(1).  And "[u]pon resolution of such matters, an

ICC shall review the inmate's case within 14 calendar days." Id. If no more matters are pending, but the inmate is being held in segregation pending transfer to general population, further reviews by the ICC must take place at least every ninety days until transfer. Id.

As currently pled, the Court believes that Plaintiff is alleging that he was placed in the ASU because of a Division D offense. (SAC at 7.) Plaintiff alleges that he was kept in the ASU for six months past his scheduled release date because McEwen and Janda failed to comply with Section 3335. (Id.)

As Defendants correctly point out, "the Ninth Circuit explicitly has found that administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence." May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997). Moreover, disciplinary confinement of inmates does not itself implicate a protected liberty interest. Sandin, 515 U.S. at 484.

The Court agrees with Defendants that Plaintiff's placement in the ASU and the conditions of the ASU alone did not deprive Plaintiff of his due process rights. See Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003) ("[I]t is not [the inmate's] administrative segregation alone that potentially implicates a protected liberty interest."). The Court also does not believe that a deprivation of telephone calls, television, or access to the library, although unpleasant, amounts to a "major disruption [in Plaintiff's] environment." Sandin, 515 U.S. at 486; see also Baumann v. Arizona Department of

<u>Corrections</u>, 754 F.2d 841, 846 (9th Cir. 1985) ("General limitation of jobs and educational opportunities is not considered punishment."); <u>Bryant v. Cortez</u>, 536 F. Supp. 2d 1160, 1167 (C.D. Cal. 2008) (holding that the loss of telephone privileges does not implicate a liberty interest because inmate can communicate by mail or in person).

Since the Court does not believe that Plaintiff's liberty interests were impeded, it need not reach the question as to whether Plaintiff was afforded a fair hearing. Accordingly, the Court RECOMMENDS that Plaintiff's Fourteenth Amendment claims against McEwen and Janda arising out of their work on the classification committee be DISMISSED WITHOUT PREJUDICE, with leave to amend. Plaintiff may allege hardships that were signifi-cant or atypical, if they did so exist.

## IV. <u>Conclusion</u>

The Court, having reviewed the SAC, Defendants' Motion to Dismiss, Plaintiff's Opposition to the Motion to Dismiss, and all documents lodged therewith and attached thereto, RECOMMENDS that Defendants' Motion to Dismiss be GRANTED in part and DENIED in part.

The Court RECOMMENDS that Plaintiff's retaliation claims against Villalobos, Flores, Vitela, Hardman, Alvarez, Amezcua, Dominguez, Castro, and Zamora be DIS-MISSED WITHOUT PREJUDICE, with leave to amend.

The Court RECOMMENDS that Plaintiff's access to the courts claims against Villalobos and Alvarez be dismissed WITHOUT PREJUDICE, with leave to amend.

The Court RECOMMENDS that any due process claims arising out of Plaintiff's Eighth Amendment claims against Paramo, Castro, Zamora, Lizarraga, and Kornbluth be DISMISSED WITH PREJUDICE, without leave to amend.

The Court RECOMMENDS that any due process claims against Alvarez, Amezcua, and Dominguez be DISMISSED WITH PREJUDICE, without leave to amend.

The Court RECOMMENDS that Plaintiff's claim against Hardman for violation of his due process rights be DISMISSED WITHOUT PREJUDICE, with leave to amend.

The Court RECOMMENDS that Plaintiff's failure to supervise claims against McEwen and Janda be DISMISSED WITHOUT PREJUDICE, with leave to amend.

The Court RECOMMENDS that Defendants' motion to dismiss Plaintiff's Eighth Amendment claims against McEwen and Janda arising out of their failure to intervene be DENIED.

The Court RECOMMENDS that Plaintiff's Fourteenth Amendment claims against McEwen and Janda that arise out of their failure to respond to Plaintiff's appeals be DISMISSED WITH PREJUDICE, without leave to amend.

The Court RECOMMENDS that Plaintiff's retaliation claim against McEwen be DISMISSED WITHOUT PREJUDICE, with leave to amend.  As to Janda, the Court RECOMMENDS that Plaintiff's retaliation claims be DISMISSED WITH PREJUDICE, without leave to amend.

Lastly, the Court RECOMMENDS that Plaintiff's Fourteenth Amendment claims against McEwen and Janda

11cv2333

arising out of their work on the classification committee be DISMISSED WITHOUT PREJUDICE, with leave to amend.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than <u>May 17, 2013</u>, any party to this action may file written objections with the Court and serve a copy on all parties.   The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than <u>May 31, 2013</u>. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.   <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:   April 19, 2013

_____
Hon. William V. Gallo
U.S. Magistrate Judge